We're now going to move to the fourth case of the day, appeal 22-1587, United States v. James F. Williams. And Ms. Day will begin with you. May it please the Court, Melissa Day appearing on behalf of James F. Williams. Your Honors, it is our position that the District Court abused its discretion when it denied First Step Act 2018 relief to Mr. Williams. Mr. Williams was eligible for that relief and was scheduled for a hearing. He was ultimately denied the relief based upon his gang membership, which continued while he was in prison, and the activities that he was believed to be associated with. And our position is that was not sufficient. First of all, there was not sufficient indicia of reliability regarding the activities that he was alleged to have participated in while in prison. Ms. Day, can I just clarify your position, please? Are you also arguing that the District Court abused its discretion to the extent that it solely relied on the fact of his gang affiliation while in prison, putting aside the activities? Yes. Or is your argument that because the Court relied on both and the activities weren't proven with reliable evidence, that that was the abuse of discretion? Yes. I do not believe that the continued participation in the gangster disciples was sufficient, nor do I believe that the reliance on the supposed activities was sufficient either. So, yes, I would include both of those in my position on this particular case. We did not, and I apologize, I was not counsel at the original hearing, so at that particular hearing, there was no evidence that was presented on the issue of whether or not participation in a gang or continued gang membership should be a basis for that. That decision was simply made. It was only after the decision that gang membership was the basis for denying the First Step Act motion that the Court heard argument from then-Counsel Hill regarding that, and only after Ms. Hill was able to make an argument did the Court even look at the documentation that the government had provided. But wasn't that because the Court looked at the documentation because Defense Counsel raised it? Yes. When the Court originally ruled, it based its ruling on the stipulation that Mr. Williams was still affiliated with a gang and stopped there, and it was Defense Counsel that said, well, wait a minute, there's no indication because of his stellar disciplinary record while in prison that this gang membership led to any problems, and that's when the Court looked at it. Yes, Your Honor, that is correct. That's sort of the process by which the Court got there. The Court then looked at some redacted records that counsel had had an opportunity to review as well, and based on that came back out and then continued to say not just the gang association but the alleged activities while in prison. And those activities were questionable, whether there was actually ever a tie to the alleged activities. There was an investigation at the penitentiary where he was housed. They found, first of all, some pictures where he was in the center, in the middle, which could indicate many things, including his age. He is either 75 or 80 years old. There is a question about his age. He would have been about 72 or 77 at that point in time. There is nothing that indicated that he was in the middle of that group because he was the leader of the gangster disciples or any of those things. There was the statement of an individual who said that he was involved in bringing drugs into the institution, but nothing at all to support that when they investigated it. They came across the envelopes that two individuals were receiving in the mail. One of them, not my client, was receiving mail that had drugs sprayed on it, and the other, my client, was receiving mail that had something sprayed on it, but it wasn't drugs. Perfume, for all we know. We have no idea what was on there, but there was nothing that tied him back to these activities. Are there particular questions, Ms. Day, that you would have had Judge Yandel ask at an examination of this that would, in your opinion, show that she exercised discretion? This is one of those cases, Your Honor, which I would make akin to a contested sentencing hearing since we're looking at the 3553A factors, and this is actually a case where I think witnesses should have been brought in to ask these questions because we have cold reports and cold summaries, and I think that's the first step. We needed to be able to step back from this and have witnesses come in and testify about these activities. But then I think that we would have needed to question the agents in this case that were doing the investigation within the Bureau of Prisons regarding certain things, like when they interviewed Mr. Williams, he acted out of character when he said, hey, you need to keep this particular man off the compound because we know, I know, I can tell you the gangster disciples are going to attack him, to assault him, and I believe that is in the last report in the attachment of records that's right before those images. But he wouldn't tell them anything more, so he's continuing his gang association, but he's not acting like a leader of the gang. I think that those are questions that would have been very pertinent to— Judge Yandel, at least in the hearing portion of it, before the written order ultimately came out, Judge Yandel said his continued involvement, his continued membership, affiliation, participation, whatever it entails with the gangster disciples is mighty troubling, given the offense conduct that underlies his sentence, because that offense conduct entailed, as a governor of the gangster disciples, involvement in a murder. And that troubled her. She was effectively saying, well, he clearly hasn't learned his lesson. He's back affiliated with the same gang that landed him in here. And I understand that concern, but I think that there is more that goes to gang association, which Ms. Hill did try to bring in, involving just his own safety. The fact that he continued a membership or affiliation with the gang didn't mean he was still trying to do any of the things that had been— But given what the government did end up bringing forward in the documents, or what ended up being reviewed by the—isn't it at some point up to the defendant to say, yes, I have an affiliation with the gang, yes, I'm a member of the gang, but that membership and affiliation has no content. It involves no activity. That's an odd position. I mean, maybe it is his position. And I think that's one of the difficult things on being on the outside looking back at this, because ideally, perhaps Mr. Williams should have testified. And whether he would or not, I don't know. I wasn't there. No, I know. But regarding what his activity was, was he maintaining his own safety? He certainly, at his age now, doesn't have the ability to withstand an attack or an assault by the GDs, I wouldn't think. And so I think that there were questions that should have been asked, but they never got to the point of being able to even discuss whether there were witnesses, whether there were other things that really should be viewed and not just this gang association. If the court has no— Did you reserve the rest of your time? Yes. Very good. Thank you, Ms. Day. Mr. Liggins, we'll move to you. Good morning, Your Honors. I'm Don Liggins, and I represented the government below in this matter. As is, I guess, readily apparent, we're here this morning because the district court denied the defendant's request for immediate release from prison under the First Step Act, and she did so because of his gang affiliation and how that gang affiliation played into his prior offense conduct that led to his conviction. The judge said that given the interplay of those two factors, the fact that he continues his association with the gangster disciples and that while on the outside he used his status in the gangster disciples to have two of his underlings murder one of his drug rivals indicated that despite his age and whatever infirmities he alleges, that there is no guarantee that he wouldn't engage in that type of conduct again. Basically, there was a finding that he remained a danger under the 3553A factors. And getting back to Your Honor's question of counsel, it is our position that ruling alone is sufficient to justify the district court's ruling here. The standard of review that this court applies in these cases is abuse of discretion, and I believe this court has gone even further to define the abuse of discretion must be such that we can't imagine any other reasonable judge reaching the same conclusion. And it's the government's position in this case that the district court's finding, which she made from the very outset of the hearing as Judge Scudder pointed out, it happened within the first three pages of the transcript. Once the judge heard that this defendant was still involved in gang activities, and she didn't care about the extent. She didn't care about what his current role was. Yeah, the only question, I think that's descriptively right. I mean, if you read the transcript, I don't know how you can take any other conclusion away from it. But when she sat down and drafted her March 25 order, it seems to rest on the twofold finding. One, that he remains affiliated. He remains a member or somehow affiliated with the gangster disciples. That's the point from the transcript. But then she adds a finding about his continued involvement in criminal activity beyond affiliation. Right? This is the stuff coming out of those investigative reports. And I hope I don't lose track of all I want to say in answering your questions. No, go ahead. The first thing I would point out is that this court in another context, but it's in these first step back type proceedings, has adopted a rule that one good reason is enough. And it is our position that when the court could have relied solely on his continued membership in the gang, apart from anything else that she may have gleaned from the documents. I guess the second thing I would point out is that, and it kind of goes back to some of the questions you asked earlier of counsel, the way that this information came out, the court had made its ruling. The court had said he's still a member of the gang. That's it. But then counsel or the counsel below wanted to make an issue that the defendant was no longer a danger to the community because his prison records would indicate that he had suffered no disciplinary type activity. And I think that there's a concept that I'm sure you're all aware of, of opening the door. And ordinarily in a sentencing proceeding, you may have to have sufficient indicia of reliability if the government is affirmatively offering something in support of a particular position. But this was a case where the defense opened the door to this information. The defense tried to make an argument that the defendants. But it would still have to be reliable to refute the defendant's position. And I think it was reliable. I mean, it's reliable enough that the Bureau of Prisons is making decisions based upon the information that they received. I don't think it has to be, it certainly doesn't have to be proof beyond a reasonable doubt. And that brings up another point. The defendant had the burden of proof in this hearing. A defendant seeking a sentence reduction under the First Step Act has the burden of going forward. And I think this panel made reference to that, that Your Honors pointed out, that if you have a contested sentencing hearing, in the contested sentencing hearing context, where actually we have the burden of proof, if witnesses are needed to be called, then it's upon the party having the burden of going forward to call those witnesses. And the defense didn't do it in this case. They had the burden of proof and they didn't discharge it. And to the extent they're raising these issues in his prison records and trying to leave the impression that that would somehow exonerate him, once it became apparent that they didn't, then I think this court can treat this as both a burden of proof and an opening the door issue. They opened the door to this information and they didn't have the ammunition to counter it once the judge started making use of it. The, I guess the, going back to the standard of review, in my review and my estimation of the record in this case, I still don't see how any reasonable judge could, you could say any reasonable judge would never make the decision that a defendant who used his gang affiliation, who used his gang stature to commit a murder on the outside, doesn't remain a danger to the community if he maintains that gang affiliation through 25 years of imprisonment. I don't think you can say a reasonable, that it is unreasonable to the point that you have to reverse it here for the judge to have found that. And the final point I guess I want to make is one of just judicial economy. I mean, I think it would be futile. The defendant is asking for a remand here and having read the transcript of the hearing, I don't see how anyone could believe that would be anything but futile in this case. It would not be unreasonable for the court to impose the exact same thing that the court did here without reference to the record from the BLP. So for all of those reasons, Your Honor, we ask that you affirm the judgment of the district court. And with that said, I will yield the rest of my time. Thank you, Mr. Liggins. Ms. Day, let me recognize you for rebuttal argument. Your Honor, Mr. Liggins says that remand would be futile in this case. And I must say that I've tilted it more than a few windmills in my career, and I don't believe that a remand would be futile. I believe that there is more that needs to be developed in this particular record. I think that the opportunity to actually thoroughly rebut the information that was contained in the records that the government provided is essential to making the right decision here. I think it is telling. Why wasn't it the defendant's burden to do that at the hearing that the court held on the motion when the court specifically said that it was going to have a hearing on this issue and there was an opportunity to present evidence? I do think out the door one of the first problems is that the judge ruled before the defense had the opportunity to say anything. But then the defense raised the issue and the court entertained it. And certainly the defense could have put on a witness then and said, well, wait, Your Honor, we want to address this. And the defense wasn't prepared to do that, or at least it didn't seem like it from the record.  I'm not familiar with the person who handled this case originally, but I wasn't in the courtroom when this occurred. I'm not familiar with everything. But I would say from what I see is we have a packet of records that don't tell us who we would call. That information was all redacted as far as I know. But why not raise that with the court? That is a question I cannot answer, is why it was not raised at that point in time to request. I know that she was trying very hard to request to even get the argument to say, Judge, no, please, hear us. And the court listened. And the court listened, and I think that's great, and reviewed the records. But I think that the opportunity to present witnesses or even knowing who those would be based upon the records we had. So why wouldn't the burden be on you at that point to say, Your Honor, we'd like to see unredacted versions of this so we know who to call or the defense is prepared to call Officer X from the prison or something along those lines to bring it to the court's attention there rather than bringing it here for the first time. And, Your Honor, I can't dispute that. And I have to say I believe the government gave access to well, the court has the sealed records, so they were not as fully redacted as what's presented in the filed brief. But to my knowledge, we didn't know who the people would be that could be called. Thank you, Ms. Day. Thank you, Mr. Luggins. The case will be taken under revised.